**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**FILED**

3:20 pm Jul 11 2023

**Clerk U.S. District Court**
**Northern District of Ohio**
**Akron**

| | | |
|---|---|---|
| MATTHEW MIRROTTO, | ) | CASE NO.: 1:21-cv-02071 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | |
| TJB INC., | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | (Resolving Doc. 17) |
| | ) | |

This matter comes before the Court on Defendant TJB Inc.'s Motion for Summary Judgment. Doc. 17. Plaintiff Matthew Mirrotto filed a Response in Opposition. Doc. 20. For the reasons stated below, Defendant's Motion for Summary Judgment is GRANTED.

**I.      FACTS**

Plaintiff began his employment with TJB in March 2019 as a machine loader. Doc. 17-1, p. 4; Doc. 17-2, p. 2. As a machine loader, he was expected to run a computer numerical control machine and load the parts into the machine. Doc. 21, p. 11. Scott and Joe Cole were Plaintiff's direct supervisors, and Daniel Fiske was TJB's General Manager. Doc. 23, p. 22.

At his prior employment, Plaintiff had started to experience the need to use the restroom frequently. Doc. 23, p. 15. He did not request any type of accommodation from his previous employer. Doc. 23, p. 15. Upon his hire with TJB, Plaintiff did not notify TJB of any disability or health issue or request any type of accommodation. Doc. 23, p. 18. Plaintiff only recalls one time between starting with TJB in March 2019 and August 24, 2019 where his restroom use was brought up at work. Doc. 23, p. 31. He recalls that Scott Cole had made a comment that Plaintiff "shit a

lot." Doc. 23, p. 31. During that time, Fiske never remarked on or discussed Plaintiff's restroom usage. Doc. 23, p. 33.

On August 24, 2019, after having blood work done at a doctor's appointment, Plaintiff went to the hospital because he was anemic. Doc. 23, p. 33-34. While at the hospital, Plaintiff was diagnosed with ulcerative colitis. Doc. 23, p. 34. Plaintiff texted Scott Cole from the hospital, telling him that he was anemic and would be in the hospital for a few days. Doc. 20-5, p. 1. Cole told Plaintiff to call either Fiske or Keri Powell, who handled human resources for TJB, to also let them know. Doc. 20-5, p. 1. Plaintiff did call Powell and told her he was in the hospital but did not provide any further details. Doc. 23, p. 36.

Upon his return to work, Plaintiff provided TJB with a doctor's note confirming he had been in the hospital. Doc. 23, p. 36. It did not provide any details about Plaintiff's health or diagnosis, and it did not request any work restrictions or accommodations for Plaintiff. Doc. 23, p. 36-37. Plaintiff recalls telling Powell he had been anemic because of stomach issues. Doc. 23, p. 38. Aside from asking for "mercy" for a week or so, Plaintiff did not request any accommodation upon returning to work. Doc. 23, p. 38.

After his August 2019 hospitalization, Plaintiff was prescribed medication for his ulcerative colitis and his need to use the restroom decreased to two to three times during the workday and his overall symptoms were getting better. Doc. 23, p. 40. At some point after his hospitalization, Plaintiff told Scott Cole that he had stomach issues and Cole understood that was why Plaintiff used the bathroom frequently. Doc. 17-4, p. 7. Plaintiff never told Cole that he had been diagnosed by a doctor or was receiving treatment for the stomach issues. Doc. 17-4, p. 7. At some point during his employment, Plaintiff overheard TJB's Operations Administrator, Debbie Miller, speaking to another employee about the Family and Medical Leave Act and Plaintiff

proceeded to tell Miller that he had irritable bowel syndrome and anxiety. Doc. 20-1, p. 9. Miller told Plaintiff to discuss it with Fiske but Plaintiff never did. Doc. 20-1, p. 9.

After his hospitalization, Plaintiff did need to leave work early on several occasions for doctor appointments. Doc. 23, p. 62. However, Plaintiff testified that "it was very casual" and no paperwork was required when he had to leave early. Doc. 23, p. 62. He did not have to take leave time; instead, he would make up the time on another day. Doc. 23, p. 63. In March 2020, Plaintiff emailed his primary care doctor and told her that he was not experiencing any symptoms except for "occasional nausea and mild abdominal pain." Doc. 23, p. 92. As of April 2020, Plaintiff was still only using the restroom approximately two to three times each shift and was able to perform his job duties. Doc. 23, p. 60.

On April 27, 2020, Fiske met with Plaintiff to go over his production numbers. Doc. 23, p. 48. TJB tracks its employees' production using cards attached to each machine on which employees would punch in and punch out and record how many pieces they had produced during that time. Doc. 23, p. 45. Fiske used one of these cards to compare Plaintiff's production with Scott Cole's as he had operated the same machine close in time to Plaintiff. Doc. 17-2, p. 7. While Scott Cole had more experience than Plaintiff, Fiske expected Cole's numbers to be lower since, as a supervisor, he had more duties to attend to and less time to work at a machine. Doc. 22, p. 22. Based on the numbers he reviewed, Fiske told Plaintiff that his production was unsatisfactory. Doc. 23, p. 48. Plaintiff agreed, testifying in his deposition that he was "positively horrified" when he heard the numbers and recalled thinking "oh, God, that is – that is really, really, you know, bad." Doc. 23, p. 48. This was the first time that someone had told Plaintiff there was an issue with his production numbers. Doc. 23, p. 46.

3

Plaintiff testified at his deposition that he recalled Fiske mentioning his restroom usage during the April 27th meeting and asked Plaintiff to pick up the pace. Doc. 23, p. 52. Fiske testified at his deposition that they never discussed Plaintiff's restroom usage and that Plaintiff did not provide an explanation for his low production numbers. Doc. 17-2, p. 13. Further, Fiske did not recall ever noticing Plaintiff using the restroom more often than other employees. Doc. 22, p. 42.

In July 2020, Fiske met with Plaintiff and told him that his production numbers had not increased since their April discussion and, as such, Plaintiff was being terminated from his employment with TJB. Doc. 17-1, p. 34. Fiske was the only person at TJB involved in the decision to terminate Plaintiff. Doc. 17-2, p. 22.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, and on November 2, 2021, Plaintiff filed the subject lawsuit against TJB alleging disability discrimination and failure to accommodate under R.C. 4112.02 and the Americans with Disabilities Act ("ADA"). Doc. 1.

## II.   LAW AND ANALYSIS

### A.  Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *.

This Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d

941, 943–944 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479– 1480 (6th Cir. 1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### B. Plaintiff's Claim of Disability Discrimination under R.C. 4112.02 and the ADA

Ohio law mirrors the ADA and Ohio courts look to federal interpretation for guidance; as such, this Court will apply the legal standard under the ADA to Plaintiff's claims of disability discrimination under both state and federal law. *King v. Steward Trumbull Memorial Hospital, Inc.*, 30 F.4th 551, 560 (6th Cir. 2022). To establish a prima facie case of disability discrimination using indirect evidence[1], Plaintiff "must demonstrate that (1) [he] has a disability, (2) [he] is otherwise qualified for the job with or without reasonable accommodation, (3) [he] suffered an adverse employment decision, (4) [his] employer knew or had reason to know of [his] disability,

---

[1] A claim for disability discrimination may be brought using direct or indirect evidence. Plaintiff makes his argument based upon indirect evidence only. Doc. 20, p. 16.

and (5) [his] position remained open, or [he] was replaced." *Hrdlicka v. General Motors, LLC*, 63 F.4th 555, 567 (6th Cir. 2023) (internal citations omitted). If a prima facie case is established, the burden shifts to the Defendant to "demonstrate that there was a legitimate, nondiscriminatory reason for the adverse employment action", and then the burden shifts back to Plaintiff to "show that the purported nondiscriminatory reason was actually a pretext designed to mask discrimination." *Id*. (internal citations omitted).

Plaintiff alleges that TJB discriminated against him because of his ulcerative colitis by terminating his employment in July 2020. Even assuming that Plaintiff could satisfy the other elements of a prima face case, the Court finds that Plaintiff has failed to establish that TJB knew or had reason to know that he was disabled. "[A]n employee cannot be considered to have been fired 'on the basis of disability' unless the individual decision-maker who fired the individual had knowledge of the disability." *Arthur v. American Showa, Inc.*, 625 F. App'x 704, 708 (6th Cir. 2015). Fiske, as the general manager of TJB, was the only person involved in the decision to terminate Plaintiff's employment in July 2020. Plaintiff does not dispute this. The only fact that Plaintiff cites to suggest that Fiske knew of, or had reason to know of, Plaintiff's ulcerative colitis is that Fiske mentioned Plaintiff's restroom usage during the April 27th discussion of Plaintiff's poor production output. While Fiske disputes that this was ever a part of their conversation, viewing the facts in the light most favorable to Plaintiff, the Court finds that this is still insufficient to overcome summary judgment.

"[A]n employer has notice of the employee's disability when the employee tells the employer that he is disabled." *Cady v. Remington Arms Company*, 665 F. App'x 413, 417 (6th Cir. 2016). "Of course, the employee need not use the word 'disabled,' but the employer must know enough information about the employee's condition to conclude that he is disabled." *Id*. "Relevant

information could include, among other things, a diagnosis, a treatment plan, apparent severe symptoms, and physician-imposed work restrictions." *Id*. An employer's general awareness of an employee's health issue or symptoms is not sufficient to establish that the employer knew of the disability. *Hrdlicka*, *supra* at 567. Further, "[a] prima facie case is not made out if the decisionmaker is unaware of the specifics of an employee's disabilities or restrictions, even if the decisionmaker has a general knowledge that a disability exists." *Tennial v. United Parcel Service, Inc.*, 840 F.3d 292, 306 (6th Cir. 2016)

Fiske mentioning Plaintiff's restroom usage during the April 27th discussion merely shows that he was aware of one potential symptom of a potential health issue. According to Plaintiff's testimony, at this point in his employment, his ulcerative colitis symptoms were generally manageable and had improved greatly from what they were in August 2019. In fact, he told his physician in March 2020, one month prior to Fiske speaking with him, that his only symptoms were occasional nausea and abdominal pain. He did not mention an increase in needing to use the restroom. He testified instead that at this time he was still approximately using the restroom only two to three times per shift.

Further, Plaintiff has not pointed to any facts in the record that show that Miller, Powell, or Scott Cole informed Fiske of any information that would satisfy this element. While Plaintiff may have told Miller that he had irritable bowel syndrome, the record shows that Miller told Plaintiff to discuss it with Fiske and Plaintiff has not pointed to any fact demonstrating that he did that. While Scott Cole knew that Plaintiff had stomach issues and used the restroom frequently, this again only shows a general awareness of a potential health issue and its symptoms. Lastly, the knowledge that Plaintiff was hospitalized in August 2019 is not sufficient to satisfy this element as Plaintiff did not return to work with any restrictions or requested accommodations. *Leeds v.*

*Potter*, 269 F. App'x 442, 449 (6th Cir. 2007) (holding that "[a]n employer cannot be said to know or have reason to know of an employee's disability where that employee returns to work without restriction or request for accommodation"). Further, there is nothing in the record to suggest that Plaintiff disclosed his diagnosis, any ongoing severe symptoms, or treatment. While Plaintiff did have to arrive late or leave early to attend doctor appointments, he testified that it was an informal process and he was not required to submit documentation to confirm where he was going.

Given the facts that Plaintiff offers, the Court finds that no reasonable fact finder could determine that TJB knew or had reason to know that Plaintiff was disabled. As such, Plaintiff is not able to establish a prima facie case of disability discrimination under the ADA or R.C. 4112.02 as a matter of law. Accordingly, Defendant's Motion for Summary Judgment on these claims is GRANTED.

### C.  Plaintiff's Claim of Failure to Accommodate under R.C. 4112.02 and the ADA

Again, this Court will review Plaintiff's federal and state law claims of failure to accommodate under the ADA standard. *King, supra* at 560. To establish a prima facie case for failure to accommodate, "a plaintiff must show that (1) [he] was disabled within the meaning of the ADA, (2) [he] was otherwise qualified for [his] position, with or without reasonable accommodation; (3) the defendant knew or had reason to know about [his] disability; (4) [he] requested an accommodation; and (5) the defendant failed to provide the necessary accommodation." *Kirilenko-Ison v. Bd. of Edu. of Danville Indep. Schs.*, 974 F.3d 652, 669 (6th Cir. 2020).

As stated above, even assuming Plaintiff can satisfy the other elements of a prima facie case, Plaintiff has failed to establish that TJB knew or had reason to know about his disability. As such, Plaintiff is not able to establish a prima facie case of failure to accommodate under the ADA

or R.C. 4112.02 as a matter of law. Accordingly, Defendant's Motion for Summary Judgment on these claims is GRANTED.

### III.    CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.


Date: July 11, 2023                              */s/ John R. Adams*
                                                 JOHN R. ADAMS
                                                 UNITED STATES DISTRICT JUDGE